**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION**

| | |
|---|---|
| Thomas Boyd, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 7:12-cv-01254-JMC |
| v. ) | |
| ) | **ORDER AND OPINION** |
| ) | |
| Staubli Corporation, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff Thomas Boyd ("Plaintiff"), proceeding *pro se*, filed this action alleging that his former employer the Staubli Corporation ("Defendant") discriminated and retaliated against him in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634.  Plaintiff also claims Defendant breached his employment contract in violation of state law.

This matter is before the court for a review of the Magistrate Judge's Report and Recommendation ("Report") [Dkt. No. 54], filed July 31, 2013, regarding Defendant's Motion for Summary Judgment [Dkt. No. 17], filed November 16, 2012.  The Magistrate Judge's Report recommends that the court grant Defendant's Motion for Summary Judgment.  Upon review of the Report and the record in this case, the court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's claims of age discrimination resulting in an adverse employment action, retaliation, discriminatory discharge, and breach of contract.

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual and procedural summation is accurate.  The court adopts this summary as its

own, and only references facts pertinent to the analysis of Plaintiff's objections. The relevant facts, viewed in a light most favorable to Plaintiff, are as follows.

Plaintiff was hired at the age of forty-one by Defendant, an international corporation with North American headquarters in Duncan, South Carolina. [Dkt. No. 17-1 at 2]. Defendant "manufactures and sells connectors for industrial applications, such as tool changers and other products for connecting fluid, gas and electrical power to various kinds of machinery." *Id.* Plaintiff worked as a sales engineer for ten years and throughout that period was supervised by Fluid Connector Division Manager Andreas Brake ["Brake"]. *Id.* In February 2011, Brake offered Plaintiff the newly created position of Key Account Manager. [Dkt. No. 17-5]. Plaintiff was provided an offer letter which he signed in acceptance of the new position on April 12, 2011, the day which he began his new role. [Dkt. No. 17-6]; [Dkt. No. 17-1 at 4]. Plaintiff's new immediate supervisor for this position was Marc Kruse ("Kruse"). [Dkt. No. 17-1 at 4]. In May 2011, Defendant sent Plaintiff to Germany for two weeks for training regarding the company's tool changers. *Id.* Defendant also provided additional local job-training programs for Plaintiff. *Id.*

On July 21, 2011, Plaintiff sent an email to Defendant's CEO Joe Gemma ("Gemma") alleging unfair treatment by Brake. [Dkt. No. 17-7]. Plaintiff complained that another employee Amanda Bradshaw ("Bradshaw") had "presented quotes to Cosma (the parent company of Eagle Bend) in Troy, MI for exactly the same multicoupling plates that we have been selling Eagle Bend for 6 years." *Id.* at 3. Plaintiff indicated that he and Bradshaw were quoting multicoupling plates to the same company but that the quote permitted for Bradshaw's presentation was 50 percent less than that allowed for Plaintiff. *Id.* Plaintiff also stated, "This is one of three cases where [Brake] has discriminated against me[.]" *Id.* at 4. A meeting was held on August 4, 2011,

at which Plaintiff expressed his concerns to Gemma and Brake. *Id.* at 5-6. Plaintiff claims that at the meeting he inquired about whether the differential treatment he received was related to his age. [Dkt. No. 1-1 at 6]. Gemma and Brake discussed with Plaintiff the reasons for their decision to give Bradshaw the authority to sell the multicoupling plates for a lower price. [Dkt. No. 17-1 at 5-7].

Following the meeting, Plaintiff alleges he was "continuously harassed by [Kruse, who] was much younger than Plaintiff." [Dkt. No. 1-1 at 6]. Plaintiff contends Kruse repeatedly told him that expense and reimbursement forms Plaintiff had filled out properly were incorrect. *Id.* On Friday, August 26, 2011, Kruse sent an email to Plaintiff at 10:07 a.m. instructing him to arrange an afternoon meeting at BMW for the following Monday, August 29th. [Dkt. No. 17-10]. Kruse also requested that Plaintiff meet with him before and after the BMW meeting. *Id.* Plaintiff received the email around 2:00 p.m. but did not respond at that time. [Dkt. No. 53 at 85]. Kruse sent Plaintiff another email at 3:10 p.m. that same day setting a firm time for the meetings the following Monday and asking Plaintiff to confirm his attendance by 5:00 p.m. [Dkt. No. 17-11]. Plaintiff did not respond to Kruse's email until late in the evening on Sunday, August 28th. *Id.* Plaintiff's email stated as follows:

> Marc, I received your emails late Friday afternoon while driving home. It is completely unreasonable for you to tell me Friday afternoon that you want a meeting at BMW on Monday. Your request came too late. I am having private meetings Monday, Tuesday, Wednesday and taking Thursday and Friday off.

*Id.*

Kruse received Plaintiff's email on the morning of Monday, August 29, 2011, just before the time he and Plaintiff were scheduled to meet. [Dkt. No. 17-1 at 12]. Plaintiff later admitted in his deposition that the "private meetings" to which he referred in his email were not actually

3

meetings, but instead were plans he made to contact colleagues in France to discuss the discrimination he felt he was experiencing. [Dkt. No. 53-1 at 92]. Shortly after receiving Plaintiff's email, Kruse complained to Brake. [Dkt. No. 17-1 at 12]. Brake then instructed Defendant's Chief Financial Officer to terminate Plaintiff's employment. *Id.* at 13.

Plaintiff brought the instant action under the ADEA claiming Defendant engaged in age-based discrimination resulting in an adverse employment action, retaliation, and discriminatory discharge. [Dkt. No. 1-1]. In addition to the allegations mentioned above, Plaintiff averred that he was given several verbal indications that it was Defendant's practice to hire younger employees and that he believed he was harassed and terminated due to his age and in response to his age discrimination complaint. *Id.* at 6-7, 9. Plaintiff further claimed that Defendant's termination of his employment breached a written contract. *Id.* at 8.

## STANDARD OF REVIEW

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Matthews v. Weber,* 423 U.S. 261, 270-71 (1976). This court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation, or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. *See United States v. Schronce,* 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the Magistrate Judge's Report,

4

this court is not required to give any explanation for adopting the recommendation. *See Camby v. Davis,* 718 F.2d 198, 199 (4th Cir. 1983).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *See id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

**DISCUSSION**

As Plaintiff is a *pro se* litigant, the court is required to liberally construe his arguments. *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978). The court addresses those arguments that, under the mandated liberal construction, it has reasonably found to state a claim. *Barnett v. Hargett,* 174 F.3d 1128, 1133 (10th Cir. 1999).

**Claim of Age Discrimination Resulting in an Adverse Employment Action**

The Magistrate Judge recommends that the court find Plaintiff has failed to plead sufficient facts to overcome Defendant's summary judgment motion for his adverse employment action claim. [Dkt. No. 54 at 13]. A plaintiff can establish claims of discrimination under the ADEA in one of two ways: either by directly showing that discrimination motivated the employment decision, or, as is more common, by relying on the indirect, burden-shifting method set forth in *McDonnell Douglass Corp. v. Green,* 411 U.S. 792 (1973). Since Plaintiff has not produced any direct evidence of discrimination, his claim of age bias resulting in an adverse employment action is analyzed under the *McDonnell Douglass Corp.* burden-shifting framework. Under this analysis, a plaintiff must first demonstrate a prima facie case of discrimination. To establish a prima facie case of age discrimination, a plaintiff must show: (1) he is a member of a protected group; (2) he has suffered an adverse employment action; (3) at the time of the adverse employment action, he met his employer's legitimate expectations; and (4) the position remained open for someone who was not a member of the protected class and who had comparable qualifications. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004). Pursuant to the burden-shifting framework, once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the employment action. *Id.*

If the defendant meets the burden of demonstrating a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the proffered reason was "not its true reason[ ], but [was] a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000). Although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuasion that the defendant engaged in intentional discrimination remains at all times with the plaintiff. *Id.*

The Magistrate Judge found that Plaintiff did not establish a prima facie case of age discrimination because he failed to demonstrate that he suffered an adverse employment action or that a similarly situated person experienced differential treatment. [Dkt. No. 54 at 12-14]. The Magistrate Judge reasoned that in order for the disparate pricing between Plaintiff and Bradshaw to constitute an adverse employment action, Plaintiff must show that his compensation was unfavorably impacted. *Id.* at 12 (citing *Holland v. Washington Homes,* 407 F.3d 208, 219 (4th Cir. 2007) ("An adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment.") (internal citation omitted)). The Report concluded that the loss in commissions alleged by Plaintiff was merely speculative and therefore, insufficient to establish that the employment action was adverse. [Dkt. No. 54 at 12-14]. The Magistrate Judge further explained that to raise an inference of discrimination, Plaintiff must prove that he and Bradshaw were similarly situated in all relevant respects. *Id.* at 14. The Magistrate Judge found that Plaintiff did not overcome Defendant's evidence that while Plaintiff and Bradshaw both quoted multicoupling plates, they were quoting to different customers (a subsidiary and its parent company) and for different purposes. *Id.* For that reason, the Report found that Plaintiff and Bradshaw were not similarly situated. *Id.*

7

Furthermore, the Magistrate Judge concluded that even if Plaintiff established a prima facie case of age discrimination, he failed to demonstrate that Defendant's justification for allowing Bradshaw to quote the multicoupling plates at a lower price was pretext for age discrimination. *Id.* at 15. The Report explained that the only evidence which Plaintiff set forth regarding differential treatment on the basis of age was his disagreement with Defendant's justification and the fact that Bradshaw was younger than Plaintiff. *Id.* The Magistrate Judge found Plaintiff's allegations inadequate to show his treatment was based on age-based discrimination as opposed to a legitimate business decision. *Id.*

The court finds that even assuming Plaintiff established a prima facie case of age-discrimination, it agrees with the Report that Plaintiff has failed to show a genuine dispute as to Defendant's alleged discriminatory motivation. Plaintiff has the ultimate burden of persuasion to show pretext by demonstrating *both* that the employer's reason was false *and* that the adverse employment action was motivated by age discrimination. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515 (1993).

In his objections, Plaintiff argues that a reasonable jury would question why Bradshaw was provided a lower price to sell the same product that he was selling. [Dkt. No. 57 at 3-4]. Defendant contends that Bradshaw was given a different price because she was promoting the product to Eagle Bend's parent company Cosma, while Plaintiff was promoting the product to a specific Eagle Bend plant. [Dkt. No. 17-4 at 9]. Moreover, just before Bradshaw's presentation to Cosma, Defendant learned that a competitor had significantly undercut its prices, which caused a marked decline in Defendant's sales. [Dkt. No. 17-1 at 6]. In response to this situation, Defendant contends it reluctantly reduced its price for Bradshaw's presentation to Cosma. *Id.* Defendant further argues that its choice was beneficial for Plaintiff because if

Bradshaw was able to secure the project with Cosma, Defendant's Eagle Bend plant would have been required to purchase the product and Plaintiff would have received the commissions from the sales within his territory. *Id.* at 6-7.  Plaintiff disputes Defendant's stated reason.. [Dkt. No. 26 at 6-8].  It appears that Plaintiff contests the timing of when Bradshaw was permitted to sell the multicoupling plates at a lower price. *Id.*  Plaintiff seems to argue that Bradshaw was promoting the product at this price before Defendant's competitor undercut its price, which would undermine Defendant's justification. *Id.*

Even if Plaintiff was able to demonstrate that Defendant's reason was completely nonsensical, the court still finds that Plaintiff has not averred sufficient facts to raise an inference of discrimination.  Plaintiff has failed to present specific proof that shows by a preponderance of the evidence that Defendant instituted disparate pricing due to discriminatory motives. *See St. Mary's Honor Center,* 509 U.S. at 516 (explaining that once the employer has offered a legitimate, nondiscriminatory reason for its decision, "the inquiry now turns from the few generalized factors that establish a prima facie case to the specific proofs and rebuttals of discriminatory motivation the parties have introduced.").  Plaintiff bases his claim of age bias on the grounds that Bradshaw, who was permitted to sell the product at a cheaper price, was less than forty years old. [Dkt. No. 1-1 at 6].  Plaintiff alleges that "on several occasions verbals [sic] remarks were made leaving Plaintiff to believe his age was an issue". *Id.*  Plaintiff also complains that when he was requested to hire employees, Defendant told him to only interview candidates that were thirty-five years or younger. *Id.* at 7.

The court finds Plaintiff's contentions too general to create a triable issue of discrimination. *See Carter v. Ball,* 33 F.3d 450, 461-62 (4th Cir. 1994) (noting that "general allegations do not suffice to establish an actionable claim of harassment").  Plaintiff does not

9

offer "specific dates, times or circumstances" to corroborate the alleged comments that were made about his age or the incidences in which he was requested to only interview younger employees. *See id.* (finding testimony regarding race-based differential treatment between the plaintiff and his white counterparts insufficient where not substantiated by specific details).

Furthermore, Defendant has presented uncontroverted evidence that Plaintiff was forty-one years old when he was first hired, [Dkt. No. 17-1 at 2], and that Plaintiff was fifty years old when he was promoted to key account manager, *id.* at 3. Plaintiff's promotion occurred just four months before he complained about the disparate pricing issue. *See id.* at 3, 5. And just two months before Plaintiff's protest, he was sent to Germany to train with other highly experienced Staubli personnel to prepare him for his new role. *Id.* at 4. Plaintiff's trip constituted a significant investment by Defendant in his career development. *Id.* Additionally, Plaintiff highlights that his annual performance reviews were consistently positive and that the reviews noted he was an asset to Defendant and a mentor to younger representatives. [Dkt. No. 26 at 4]. Given this substantial evidence of positive treatment by Defendant towards Plaintiff, the court finds it highly unlikely Defendant's institution of disparate pricing was motivated by age bias. *See Mitchell v. Data General Corp.,* 12 F.3d 1310 (4th Cir. 1993) ("[W]hen the individual who hires an employee is the same person who discharges him only a few months later, a strong inference arises that discrimination was not a determining factor for the adverse action [because] employer animus in termination, but not in hiring, would appear to be irrational.").

Thus, even while assuming Plaintiff has alleged sufficient facts to demonstrate Defendant's proffered reason was unpersuasive, the court finds that Plaintiff's evidence of pretext falls short of that needed to overcome summary judgment. *See Reeves,* 530 U.S. at 134-35 ("Certainly there will be instances, where, although the plaintiff has established a prima facie

10

case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.").

**Retaliation Claim**

The Magistrate Judge concluded that Plaintiff failed to proffer any competent evidence that Defendant retaliated against him by terminating his employment in response to his allegations of age discrimination. [Dkt. No. 54 at 16-18]. In order to establish a prima facie case of retaliation under the *McDonnell Douglas Corp.* framework, a plaintiff must show: (1) he was engaged in a protected activity; (2) he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the employment action. *E.E.O.C. v. Navy Federal Credit Union,* 424 F.3d 397, 405-06 (4th Cir. 2005). Once the prima facie case is established, the normal burden-shifting analysis follows. *See id.* at 405. The Report concluded that Plaintiff did not present any evidence that he was engaged in protected activity and thus Plaintiff did not establish a prima facie case. [Dkt. No. 54 at 16]. Moreover, the Magistrate Judge found that even if Plaintiff could establish a prima facie case, he failed to demonstrate that Defendant's stated reason for his termination was pretext for retaliation. *Id.* at 17.

The court finds that assuming Plaintiff was engaged in protected activity, he has not alleged sufficient facts to create a genuine issue that his termination was the result of age discrimination. Plaintiff claims he was harassed and then discharged from his employment in retaliation of his complaint to upper management that he was experiencing discrimination on the basis of age. [Dkt. No. 1-1 at 6-7]. Plaintiff contends that shortly after complaining of age discrimination, his supervisor Kruse began to harass him by telling him that his allegedly correct expense and reimbursement reports were incorrect. [Dkt. No. 1-1 at 6]. Defendant argues that Kruse's treatment could not have been in response to Plaintiff's allegations because Kruse was

not at the meeting where Plaintiff raised his grievances. [Dkt. No. 17-1 at 29]. Plaintiff avers just one specific incident about an expense report submitted in late July in which Plaintiff alleges he was asked to correct the report three different times due to problems Kruse purportedly manufactured to harass him. [Dkt. No. 26 at 16-19]. The court finds that Plaintiff's subjective opinion regarding the animus behind his alleged harassment is inadequate to demonstrate a causal connection between his professed protected activity and the treatment he received. *See Bryant v. Bell Atlantic Maryland, Inc.,* 288 F.3d 124, 134-35 (4th Cir. 2002) ("[S]ubjective beliefs,…without more, [are] insufficient to create a genuine issue of material fact as to any discriminatory conduct[.]").

Defendant states that it terminated Plaintiff's employment because Plaintiff ignored Kruse's urgent emails regarding a meeting on the following business day. [Dkt. No. 17-1 at 11]. Plaintiff responded at such a late hour that Kruse, as anticipated by Plaintiff, did not receive Plaintiff's email until the morning of the meeting. *Id.* at 12; [Dkt. No. 17-3 at 85-86]. In his emailed response, Plaintiff stated that he would not attend the meeting. [Dkt. No. 17-11]. Additionally, in his email Plaintiff indicated that he was taking two days off at the end of that week. *Id.*

Plaintiff does not contest the accuracy of Defendant's account regarding his purposefully delayed response to Kruse. [*See* Dkt. No. 17-3 at 30-32]. Plaintiff instead argues that there was no legitimate need for the meeting that he failed to attend. [Dkt. No. 57 at 6]. "It is not for this court…to direct the business practices of any company." *E.E.O.C. v. Clay Printing Co.,* 955 F.3d 936, 936 (4th Cir. 1992). Nor is it appropriate for this court to "sit as a super-personnel department weighing the prudence of employment decisions made by the defendants." *Anderson v. Westinghouse Savannah River Co.,* 406 F.3d 248, 272 (4th Cir. 2005) (internal quotation

marks and citation omitted). Therefore, the court finds that Defendant has set forth a legitimate, nondiscriminatory explanation for Plaintiff's termination, and Plaintiff has not presented sufficient evidence to give rise to a genuine issue that Defendant's stated reason was pretext for discrimination.

Thus, the court accepts the recommendation of the Report and concludes Defendant is entitled to summary judgment for Plaintiff's retaliation claim.

**Discriminatory Discharge Claim**

To the extent that Plaintiff has raised a discriminatory discharge claim, the court likewise finds it cannot survive summary judgment. To establish a prima facie case of discriminatory discharge, a plaintiff must show: (1) he is a member of a protected group; (2) he is qualified for his job and he met his employer's legitimate expectations; (3) he was fired despite his qualifications and performance; and (4) he was replaced by someone who was not a member of the protected class and who had comparable qualifications. *Causey v. Blog,* 162 F.3d 795, 802 (4th Cir. 1998). The typical burden-shifting framework then follows.

Plaintiff fails at step two in demonstrating he was meeting his employer's legitimate expectations as described in the previous section due to the incident in which he ignored his supervisor's emails and missed scheduled meetings. Furthermore, even assuming Plaintiff has plead sufficiently to establish a prima facie case, Plaintiff has not, as discussed previously, set forth evidence from which a factfinder could reasonably conclude that Defendant's stated reason for his termination was pretext for discrimination.

Thus, the court finds Plaintiff has not created a genuine issue as to a discriminatory discharge.

**Breach of Contract Claim**

Plaintiff alleges that he had a written contract with Defendant for his promotion to Key Account Manager and that Defendant had no justification under the contract to terminate him without cause. [Dkt. No. 1-1 at 8]. The court finds based on its review of Plaintiff's evidence that the purported "written contract" between Defendant and Plaintiff, *see id.* at 11-12, was instead an offer letter that, upon Plaintiff's acceptance, became a unilateral employment contract. *See Small v. Springs Indus., Inc.,* 292 S.C. 481, 484, 357 S.E.2d 452, 454 (1987). Because the contract was for an indefinite term of employment, it was presumed to be terminable at will. *Cape v. Greenville County Sch. Dist.,* 365 S.C. 316, 319, 618 S.E.2d 881, 883 (2005). In order to alter this presumption, the agreement was required to have express language indicating that Plaintiff's employment was only terminable for just cause. *Id.* Plaintiff argues that language in the letter which promised a certain salary for three years constituted such a provision. The court disagrees and concludes Plaintiff's contract was for an indefinite duration. Therefore, as the Magistrate Judge stated, "[D]efendant was free to terminate his employment for any reason or no reason at all." [Dkt. No. 54 at 19].

## CONCLUSION

For the reasons set forth above, the court **ACCEPTS** the Magistrate Judge's Report and Recommendation [Dkt. No. 54]. The court **GRANTS** Defendant's Motion for Summary Judgment for Plaintiff's claims of age discrimination resulting in an adverse employment action, retaliation, discriminatory discharge, and breach of contract [Dkt. No. 17], and **DISMISSES** this action with prejudice.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Court Judge

September 30, 2013
Greenville, South Carolina

15